UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

        Plaintiff,

                                                  Case No. 20-cr-0229-bhl

    v.

CORNELIUS M JACKSON,

        Defendant.

## ORDER

        Cornelius M. Jackson has been indicted on multiple counts of sex-trafficking. (*See* ECF No. 1.) On September 21, 2022, Jackson filed three motions to suppress and also asked the Court to order the Government to provide him with a bill of particulars. (ECF Nos. 50–53.) In his first motion, Jackson seeks both the suppression of all evidence derived from the execution of a search warrant on his Waukesha home, on grounds the issuance of the search warrant was not supported by probable cause, and a *Franks* hearing on the challenge. (ECF No 50.) His second and third motions seek suppression of the alleged victim's out-of-court identifications of him and exclusion of out-of-court statements he made in connection with a prior (2015) arrest. (ECF Nos. 51 & 52.) His request for a bill of particulars is premised on complaints about the large volume of discovery produced by the government. (ECF No. 53.) On February 6, 2023, Magistrate Judge Nancy Joseph issued a report and recommendation on the motions. (ECF No. 70.) The magistrate judge recommended denying Jackson's challenge to the search warrant and his request for a *Franks* hearing, concluding probable cause supported the warrant and a *Franks* hearing was not justified. (*Id.* at 2.) Judge Joseph also recommended denying both Jackson's challenge to the identification testimony and his request for a bill of particulars. (*Id.*) The magistrate judge recommended granting Jackson's request to suppress his 2015 post-arrest statements, a result the government did not oppose. (*Id.*)

Jackson has filed timely objections to most of the magistrate judge's rulings and his objections are now fully briefed.[1] (ECF Nos. 71, 77 & 78.) Having reviewed the record, the Court will overrule Jackson's objections and adopt Judge Joseph's well-reasoned Report and Recommendation in its entirety.

## BACKGROUND

On August 23, 2020, at around 5:00 a.m., Milwaukee Police Officer James Pittman was dispatched to the 1400 block of Brady Street. (ECF No. 70 at 3.) A female caller, later identified as AV-4, reported that the people she was staying with had stolen her personal belongings and left her in an unfamiliar area. (*Id.*) Another witness called too, reporting that he had seen a man throw a woman down and he suspected the man was the woman's "pimp." (*Id.*)

In an interaction captured on his body camera, Pittman approached AV-4 and another woman on the street, informed them he had received reports of a physical altercation and asked them what was going on. (*Id.*) After Pittman separated the two women, AV-4 told him she had been celebrating a friend's birthday when her companions took her belongings and left her on the street because they did not like what she was doing. (*Id.*) She denied anyone was attempting to hurt her and stated she only called the police to report her stolen items. (*Id.*) AV-4 admitted that she had scrapes on her body from being shoved to the ground but did not wish to press charges. (*Id.*) Pittman then asked if she would like him to pretend to arrest her in order to take her somewhere safe. (*Id.*) AV-4 began crying and Pittman handcuffed her and placed her in a police van. (*Id.* at 3–4.)

At first, AV-4 denied any involvement in illegal activity. She told Pittman that she lived with Jackson and the other woman, and everything was fine. (*Id.* at 4.) She also initially denied that Jackson encouraged her to make "dates" with men, but then said Jackson wanted her to approach random men and ask them what they do, although she claimed she was not sure why. (*Id.*) She specifically denied engaging in prostitution and denied Jackson mentioning "dates" for money. (*Id.*)

Eventually, however, AV-4 provided officers a different story. She admitted that Jackson had grabbed her by the neck until she passed out while two other women yelled at her. (*Id.*) As

---

[1] Jackson has not objected to Judge Joseph's recommendation that his motion to suppress the victim's out-of-court identification be denied. The Government has not objected to Judge Joseph's recommendation that Jackson's out-of-court statements be suppressed. Both recommendations will therefore be adopted.

the interview continued, other officers informed Pittman that pole camera footage corroborated her report and showed Jackson having choked AV-4 to unconsciousness. (ECF No. 60 at 4.) Pittman then asked AV-4 to mark on a diagram of a body where she was struck, injured, or hurt. (ECF No. 70 at 4.) AV-4 told Pittman that a woman pulled her hair, and that Jackson pushed her down, injuring her. (*Id.*) She also said Jackson threatened to kill her, tried to choke and bite her, wanted to control her activities, and had a firearm in his home. (*Id.*) She then further reported that Jackson had told her a few days earlier that he wanted her to "work for what she's worth" and explained to her the hours, pay, and prices: $200 for thirty minutes, $300 for an hour. (*Id.*) She believed him to be telling her that she would have to use her body. (*Id.*) AV-4 said she reluctantly agreed only because she felt she was in Jackson's possession and was his property. (*Id.* at 4–5.) She also told Pittman that Jackson said he would get her a Greyhound bus ticket if she wanted to leave, but she did not believe him. (*Id.* at 4.) AV-4 also identified one of the women as "big momma." (*Id.*)

At some point, Officer Gerardo Orozco arrived and took over the investigation. (*Id.* at 5.) Orozco more thoroughly interviewed AV-4, who then described Jackson's trafficking activities in detail. (*Id.*) AV-4 reported that she met Jackson on a "dating application" and agreed to meet him the following day. (*Id.*) She further related that Jackson picked her up from her Appleton residence the next day in a red Cadillac Escalade, which she described in some detail. (*Id.*) The car had a tan leather interior, televisions, white license plate covering with Wisconsin plates, and a "Native American earmuff/dreamcatcher bear claw necklace hanging from the rearview mirror." (ECF No. 55-1 at 5.) Jackson then drove to a gas station, purchased a bottle of alcohol, and continued on to the Oneida Hotel & Casino in Green Bay. (ECF No. 70 at 5.) Once at the hotel, Jackson called for another woman—who was accompanied by two other women—to come to the car. (*Id.*) According to AV-4, they all hung out at a hotel room later that day. (*Id.*) She observed condoms on the nightstand. (*Id.*) AV-4 later saw men come into the room with the women and was required to leave when that happened. (*Id.*) She also stated that once the men left the room, the women gave money to Jackson. (*Id.*)

AV-4 reported that she and Jackson then left the casino and drove to Jackson's residence located at 1436 Big Bend Road in Waukesha, where she stayed along with the other women who were at the hotel. (*Id.* at 6.) The residence had a massage room and AV-4 reported that random men would come by for massages. (*Id.*) When they did, Jackson would go to another room. (*Id.*)

After three days at the Waukesha residence, Jackson asked AV-4 if she wanted to make $10,000 "for the team," because she had to make money to pay the bills. (*Id.*) AV-4 stated Jackson "guilt-tripped" her into conducting "dates," meaning she engaged in sex acts for money. (*Id.*) For these "dates" at the house, Jackson and his female accomplice had specific rules for AV-4 to follow. (*Id.*) She had to call Jackson "daddy," count the money first, and text Jackson whether everything went good or bad. (*Id.*) She also had to request that the date send her photographs of his genitals and middle finger, ask if the person was affiliated with law enforcement, and set a timer or alarm once she sent the text to Jackson. (*Id.*) AV-4 told Orozco that Jackson took her cell phone and used unknown photos to create an escort advertisement on a website known to be used for escort and prostitution services. (*Id.*) In total, AV-4 conducted six dates at Jackson's Waukesha residence. (*Id.*) She also informed Orozco that the women went to Milwaukee eight times, three of which were attempts to engage in commercial sex acts. (*Id.*)

AV-4's interview with Orozco served as the basis for Waukesha Detective Kenny Stucker's application for a search warrant of Jackson's Waukesha address: 1436 Big Bend Road, Unit A. (*Id.* at 5.) In his affidavit, Stucker stated that on August 23, 2020, he had received a report from Milwaukee Police Department (MPD) regarding a strangulation/suffocation and human trafficking offense. (ECF No. 55-1 at 5.) MPD also had reported that the alleged victim, AV-4, had been strangled by Jackson and he and another individual had "forced" her into performing commercial sex acts. (*Id.*) On August 25, 2020, a Waukesha County Circuit Court judge approved a search warrant of Jackson's Waukesha residence based on Stucker's affidavit. (*Id.* at 8.) The warrant permitted law enforcement officers to search Jackson's Waukesha apartment, vehicles, storage units, outbuildings, and associated persons. (*Id.* at 4.) It also permitted the search and seizure of electronic devices, including cell phones. (*Id.*)

On August 27, 2020, law enforcement executed the search warrant at Jackson's residence and on his vehicle parked there. (ECF No. 60 at 5.) Officers recovered 19 cellular phones and other electronic devices. (*Id.*) They also seized ammunition, along with identification and bank cards for individuals who did not reside there. (*Id.*) Just over three months later, Jackson was indicted and a warrant was issued for his arrest. (ECF No. 1.)

The 2020 arrest was not Jackson's first. He had previously been arrested in April 2015 after a physical disturbance at an Ashwaubenon, Wisconsin hotel. (ECF No. 52 at 1.) An officer handcuffed Jackson and placed him in the back of a squad car, then another officer asked Jackson

open ended questions like "what's going on tonight?" and "why are we here?" and Jackson provided detailed responses. (*Id.*) It was only after the discussion proceeded for about a half hour that the officers finally read Jackson his *Miranda* rights. (*Id.* at 1–2.) Then, fifteen minutes later, the officer told Jackson that they would go to the police station to get his statement, to which Jackson replied, "you all know everything, so there's no reason for that" and that he had "nothing else to say." (*Id.* at 2.)

On December 1, 2020, a grand jury indicted Jackson on four counts of sex trafficking by force, fraud, or coercion, and one count of conspiracy to engage in sex trafficking. (ECF No. 1.) After pleading not guilty, Jackson moved to suppress the fruits of the search warrant, the identification of him by AV-4, and his out-of-court statements stemming from his prior 2015 arrest. Jackson also requested a bill of particulars and a *Franks* hearing. (ECF Nos. 50–53.)

In a nineteen-page report and recommendation, Judge Joseph rejected most of Jackson's requests. (ECF No. 70.) The magistrate judge recommended granting Jackson's motion to suppress his out-of-court statements because it was unopposed but otherwise denied his motions. (*Id.*) The balance of his motions were denied. The magistrate judge explained that AV-4's initial denial of Jackson's sex-trafficking activities did not make the detective's search warrant affidavit untrustworthy and found that the warrant was supported by probable cause and not overbroad. (*Id.* at 8–13.) Judge Joseph also concluded that Jackson's request to suppress AV-4's identification of him was based on a misunderstanding of the procedure employed. (*Id.* at 14.) Finally, Judge Joseph denied Jackson's request for a bill of particulars explaining that voluminous discovery is not a proper basis for such a request, particularly where, as here, the government opens its entire file to the defense. (*Id.* at 17.)

## LEGAL STANDARD

A federal court reviews, de novo, "those portions of [a magistrate judge's] report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. §636(b)(1)(C). Unchallenged portions of the report are reviewed only for clear error. *See Johnson v. Zema Sys. Corp.*, 170 F.3d 734, 739 (7th Cir. 1999).

## ANALYSIS

Jackson objects to several aspects of Judge Joseph's report and recommendation, including her recommended denial of: (1) his motion to suppress the fruits of the search warrant; (2) his request for a *Franks* hearing; and (3) his request for a bill of particulars. (ECF No. 71.) According

to Jackson, the search warrant for his Waukesha apartment was invalid because it was not supported by probable cause and failed to limit the search with sufficient specificity. (*Id.* at 1.) He also contends that the affidavit used to obtain the search warrant improperly relied on reckless statements and material omissions, entitling him to a *Franks* hearing. (*Id.*) Finally, he argues that the voluminous discovery provided by the government necessitates a bill of particulars to adequately prepare for trial. (*Id.* at 11.) Jackson does not object to Judge Joseph's recommendation to grant his motion to suppress his out-of-court statements or her denial of his motion to suppress AV-4's identification of him. Because Jackson fails to show the magistrate judge's rulings were wrong and the unchallenged portions of the report contain no clear error, the Court will adopt Judge Joseph's report and recommendation in full.

I. **Jackson Has Not Shown Error in the Magistrate Judge's Rejection of His Challenge to the Search Warrant.**

The Fourth Amendment provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. "When, as here, an affidavit is the only evidence presented to a judge to support a search warrant, 'the validity of the warrant rests solely on the strength of that affidavit.'" *United States v. Mykytiuk*, 402 F.3d 773, 775–76 (7th Cir. 2005) (quoting *United States v. Peck*, 317 F.3d 754, 755–56 (7th Cir. 2003)). "A search warrant affidavit establishes probable cause when, based on the totality of the circumstances, it 'sets forth sufficient evidence to induce a reasonably prudent person to believe that a search will uncover evidence of a crime.'" *Id.* at 776 (quoting *Peck*, 317 F.3d at 756). "[P]robable cause is a low bar that can be cleared without a *prima facie* showing of criminal activity." *United States v. Rees*, 957 F.3d 761, 769 (7th Cir. 2020).

"The task of the issuing magistrate is simply to make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit before [her], there is a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Sims*, 551 F.3d 640, 644 (7th Cir. 2008) (quoting *United States v. Koerth*, 312 F.3d 862, 866 (7th Cir. 2002)). That decision is afforded great deference. *See United States v. Bell*, 585 F.3d 1045, 1049 (7th Cir. 2009). Thus, a reviewing court should "uphold a finding of probable cause so long as the issuing judge had a substantial basis to conclude that the search was reasonably likely to uncover evidence of wrongdoing." *United States v. Aljabari*, 626 F.3d 940, 944 (7th Cir. 2010). Reversal is appropriate "only when the supporting affidavit, read as a whole in a realistic and common sense

manner, does not allege specific facts and circumstances from which the magistrate could reasonably conclude that the items sought to be seized are associated with the crime and located in the place indicated." *United States v. Spry*, 190 F.3d 829, 835 (7th Cir. 1999). "[D]oubtful cases should be resolved in favor of upholding the warrant." *United States v. Quintanilla*, 218 F.3d 674, 677 (7th Cir. 2000).

Jackson first argues that the search warrant did not provide a sufficient nexus between his electronic devices and human trafficking. (ECF No. 71 at 5.) This misstates the record. The affidavit makes clear that electronic devices were a part of Jackson's activities. It describes his having met AV-4 on a dating application, his creation of a profile for her on an escort website, and his use of pictures from her phone for that profile. (ECF No. 55-1 at 5, 7.) Detective Strucker also pointed out that, according to his training and experience, individuals who engage in sex trafficking often use logbooks and client databases, sometimes electronically. (*Id.* at 7.) Taken together—or even separately—these facts provide probable cause for the issuance of the warrant. *See United States v. Wiley*, 475 F.3d 908, 916 (7th Cir. 2007) ("[P]robable cause does not require direct evidence linking a crime to a particular place. Instead, issuing judges are entitled to draw reasonable inferences about where evidence is likely to be found given the nature of the evidence and the type of offense.") (quoting *United States v. Anderson*, 450 F.3d 294, 303 (7th Cir. 2006)). The affidavit thus supplied sufficient facts to allow the issuing judge to reasonably infer that there was a fair probability that evidence of sex trafficking would appear on Jackson's cell phone and other electronic devices in his residence. *See United States v. Zamudio*, 909 F.3d 172, 176 (7th Cir. 2018).

Jackson next challenges the specificity of the warrant. He contends the affidavit was overbroad because it provided no timeframe for the search of the electronic devices and permitted the search of all electronic data. (ECF No. 71 at 7.) He also argues the warrant should have limited the search of electronics to a timeframe starting in late July 2020, when AV-4 met Jackson, through the date the warrant was issued. (*Id.*) Last, Jackson also argues the warrant should have limited the search of Jackson's devices to specific content. (*Id.* at 8.)

The Fourth Amendment requires search warrants to describe with particularity the place to be searched and the things to be seized. This is to protect "against the government's indiscriminate rummaging through [] property" and "prevent the searching for and seizure of items that there is no probable cause to believe are either contraband or evidence of a crime." *United States v. Winn*,

79 F. Supp. 3d 904, 918 (S.D. Ill. 2015) (quoting *United States v. Jones*, 54 F.3d 1285, 1289–90 (7th Cir. 1995)). So, for example, a search warrant allowing police to seize "any or all files" on a cell phone in connection with a public indecency crime would likely lack probable cause and be considered overbroad. *Id.* at 919.

The search warrant at issue here did not permit the search of "any and all" files—it specifically stated that police may seize evidence related to human trafficking. (ECF No. 55-1 at 1.) This is sufficiently limited with respect to content. *United States v. Bishop*, 910 F.3d 335, 336 (7th Cir. 2018) ("Th[e] warrant does permit the police to look at every file on [a] phone and decide which files satisfy the description. But [it] is wrong to think that this makes a warrant too general. Criminals don't advertise where they keep evidence."). And there was ample justification for authorizing a search of items predating AV-4's involvement with Jackson. The supporting affidavit contained information suggesting Jackson's involvement in human trafficking predated meeting AV-4, including factual assertions of Jackson's preexisting involvement with other women who lived in Jackson's home and who gave "random guys" massages and AV-4's report that Jackson told her she needed to "mak[e] money for the team." (ECF No. 55-1 at 6.) This is enough to allow law enforcement to seize information prior to July 2020 when Jackson met AV-4. *See United States v. Parra*, 402 F.3d 752, 764 (7th Cir. 2005) ("So long as the totality of the circumstances, viewed in a common sense manner, reveals a probability or substantial chance of criminal activity on the suspect's part, probable cause exists.").

Finally, Jackson maintains that the warrant's language authorizing the search of any vehicle on the premises fails the Fourth Amendment's particularity requirement.[2] (ECF No. 71 at 10.) In particular, Jackson contends that Judge Joseph "impermissibly exceeded the 4 corners of the affidavit" because her recommendation considered the fact that officers found Jackson's car—the same color, make, and model identified in the warrant—in the parking space assigned to Jackson. (*Id.*; ECF No. 70 at 12–13.) This reads the record too narrowly. The warrant specifically authorized the search of "any vehicles…associated with the premises, all with the street address 1436 Big Bend Road Unit A, City of Waukesha, Waukesha County, Wisconsin." (*See* ECF No. 55-1 at 4.) Detective Stucker's accompanying affidavit noted that when Jackson picked up AV-4

---

[2] The government argues that Jackson cannot challenge the search of the car because he does not have standing to challenge it as his name is not on the registration. (ECF No. 77 at 5.) Because Jackson's challenge fails, the Court will not rule on whether Jackson has standing on the issue. (*See* ECF No. 70 at 11 n.2 ("I will assume without deciding that Jackson has standing to challenge the search.").)

in Appleton, he "was driving a red Cadillac Escalade with tan leather interior" with Wisconsin plates. (*Id.* at 5.)

Jackson relies on *United States v. Stewart*, No. 20-CR-56-JPS, 2020 WL 6255676, at *4 (E.D. Wis. Oct. 23, 2020) to argue that warrants that fail to specify whether "on premises" means a garage, driveway, or street are "patently unreasonable." *Stewart*, however, is inapplicable. In *Stewart*, the Court found a lack of probable cause because the search warrant's supporting affidavit broadly referred to any vehicles that "controlled substances can be secreted in … vehicles on and associated with the premises." *Id.* ("Officers are not authorized to search a location simply because it is capable of holding controlled substances."). The affidavit here not only describes Jackson's alleged vehicle with particularity, but also describes the vehicle's role in the underlying events, including how Jackson picked AV-4 up in that vehicle and drove her to a gas station and to a hotel/casino where other women engaged in "dates" at Jackson's direction, then took AV-4 to Jackson's Waukesha apartment in the same vehicle. (ECF No. 55-1 at 5-6.) Upon executing the warrant, officers found a vehicle matching the warrant's description parked directly outside of Jackson's apartment. (ECF No. 70 at 12.)

Jackson's challenge to Judge Joseph's observation that his vehicle was found in his apartment's parking spot, a fact outside the supporting affidavit, does not help him. The record confirms that law enforcement found a vehicle that precisely matched AV-4's description directly outside of his apartment: whether it was in Jackson's assigned parking space or not is irrelevant. Judge Joseph's inclusion of information outside the affidavit does alter that fact that law enforcement had probable cause to search the vehicle. It matched the affidavit and was parked in a spot that, regardless of its assignment to Jackson, was outside his apartment and thus logically connected to him. *See Stewart*, 2020 WL 6256676, at *5 ("[T]he officer must describe the things to be searched with some particularity …. What type of car? What color? Where would it have been parked? Any one of these details would have been sufficient; particularity is not a high bar, and there is no reason not to meet it."). The search warrant provided both a sufficient nexus between the items sought and human trafficking and a sufficiently narrow and particular description of the items to be searched. Therefore, Jackson's motions to suppress the fruits of the warrant must be denied.

## II. Jackson Is Not Entitled to a *Franks* Hearing Because He Has Not Shown That the Affidavit Contained Any Materially False Statements or Omissions.

In *Franks v. Delaware*, 438 U.S. 154 (1978), the United States Supreme Court recognized a criminal defendant's right, in limited circumstances, to challenge the veracity of statements made in an affidavit supporting a search warrant. The Court held that a defendant may dispute the accuracy of an allegedly faulty affidavit at a so-called *Franks* hearing provided he first makes a "'substantial preliminary showing' that: (1) the affidavit contained a materially false statement; (2) the affiant made the false statement intentionally, or with reckless disregard for the truth; and (3) the false statement was necessary to support the finding of probable cause." *United States v. Maro*, 272 F.3d 817, 821 (7th Cir. 2001) (quoting *Franks*, 438 U.S. at 155-56). This standard also applies when an affidavit is challenged on the grounds that key facts were omitted. *See United States v. Williams*, 737 F.2d 594, 604 (7th Cir. 1984).

The core of Jackson's argument is that the affidavit submitted in support of the search warrant was based solely on Orozco's interview with AV-4, and statements she made to him contradict her initial denials to Officer Pittman that she had any involvement in prostitution. (ECF No. 71 at 2–5.) Jackson argues that the affiant had read Officer Pittman's report and thus knew of AV-4's prior statements and had "obvious reasons" to omit these initial denials. (*Id*. at 5.) Jackson further states (with little explanation) that the omitted statements were material to the finding of probable cause. (*Id*.) Jackson has not made a sufficient showing to necessitate a *Franks* hearing.

As an initial matter, the identified omissions and reckless statements turn on AV-4's initial interview with Officer Pittman—an interview after she had just been choked to the point of unconsciousness and in the presence of another person. Her initial denials are thus hardly surprising. Once questioned in private, after she was separated from the other woman, AV-4 opened up about her involvement in Jackson's scheme and provided substantial detail concerning that involvement. It is well-documented that people who experienced trauma like AV-4 often have difficulty opening up, even to well-meaning outsiders. *See* Laura Simich et al., *Improving Human Trafficking Victim Identification—Validation and Dissemination of a Screening Tool*, Vera Institute of Justice, 165 (2014). The fact that she denied involvement at first does not make her later statements untrustworthy.

But, even if AV-4's initial denials to Officer Pittman were deemed material, Jackson's request for a *Franks* hearing fails because he has not shown that the affiant intentionally acted with reckless disregard for the truth. Arguing that the affiant had "obvious reasons" to omit these initial

denials does not provide any proof of intention or reckless disregard for the truth. *See United States v. Johnson*, No. 07-CR-144, 2007 WL 2949530, at *2 (E.D. Wis. Oct. 10, 2007) ("The fact that [an] initial denial was omitted is hardly evidence police were attempting to mislead the issuing magistrate."). And, as Judge Joseph points out, the suggestion that the omission was intentional is contradicted by the affidavit's simultaneous omission of other details that bolstered AV-4's account. The affidavit makes no mention, for example, that her strangulation was captured on camera or that a bystander confirmed Jackson's physical altercation with AV-4. (ECF No. 70 at 8–9.) Given the overall context of AV-4's initial denials and subsequent testimony, the search warrant was supported by probable cause. Therefore, Jackson's request for a *Franks* hearing must be denied.

### III.  A Bill of Particulars Is Not Warranted.

A defendant may request a bill of particulars which is "a more specific expression of the activities defendant is accused of having engaged in which are illegal" under Federal Rule of Criminal Procedure 7(f). *United States v. Canino*, 949 F.2d 928, 949 (7th Cir. 1991). The decision on whether to grant a motion for a bill of particulars is similar to determining the sufficiency of an indictment, "that is, 'whether the indictment sets forth the elements of the offense charged and sufficiently apprises the defendant of the charges to enable him to prepare for trial.'" *United States v. Fassnacht*, 332 F.3d 440, 446 (7th Cir. 2003) (quoting *United States v. Kendall*, 665 F.2d 126, 134 (7th Cir. 1981). "[A] bill of particulars is not required when information necessary for a defendant's defense can be obtained through 'some other satisfactory form.'" *Canino*, 949 F.2d at 949. One type of other satisfactory form is an "open-file" discovery policy where the government provides a defendant "with complete and open discovery of all evidence assembled and revealed in the government's investigation." *Id.*

Jackson argues that a bill of particulars is required here because the government has served him with voluminous discovery. (ECF No. 71 at 11.) In Jackson's view, because several alleged victims may also be co-conspirators, he needs to know the identities of any and all alleged co-conspirators in order to prepare for trial. (*Id.*) Jackson overstates the burdens of his position. His indictment lists the offenses he is charged with, along with citations to the statutes violated and the times and places where his conduct violated the statutes cited. (*See* ECF No. 1); *Fassnacht*, 332 F.3d at 446 (noting that when an indictment includes "each of the elements of the offense charged, the time and place of the accused's conduct which constituted a violation, and a citation

to the statute or statutes violated," the indictment is sufficient). This is sufficient to defeat his request.

Moreover, the government has also already provided Jackson with an appropriate alternative to a bill of particulars: "open-file" discovery. (ECF No. 77 at 8.) Even if the indictment were insufficient in a certain area, the government did all that was required of them by providing Jackson with the appropriate information through discovery. *See Canino*, 949 F.2d at 949 ("The nature and operations of the [government's] 'open-file' policy is an adequate 'satisfactory form' of information retrieval, making the bill of particulars unnecessary."); *United States v. Williams*, No. 16-CR-111-JPS, 2017 WL 1437119, at *2 (E.D. Wis. Apr. 24, 2017) ("[The defendant] has it backwards to suggest that the volume of discovery indicates a need for a bill of particulars."). The government also maintains that its discovery is well-organized, and, noting that it "is cognizant of the large volume of jail calls provided in discovery," voluntarily provided Jackson's counsel with list of 29 jail calls it believes will be most helpful in preparation for trial. (ECF No. 77 at 13.)

And, as the government notes, "courts have generally denied requests for a bill of particulars seeking identification of all co-conspirators." (*Id.* at 10); *United States v. Armbruster*, 2021 WL 5232261, at *3 (E.D. Wis. June 10, 2021). As in *Armbruster*, Jackson provides no authority to the contrary that requires this Court to grant him a bill of particulars to identify any co-conspirators; instead, he relies on what he refers to as the government's "open-dump" discovery policy. (ECF No. 71 at 13.) This is not enough to require a bill of particulars. The Court appreciates that "[t]he stakes are high" for Jackson, (*id.* at 11), but that does not mean he is entitled to know prior to trial how the government intends to prove its case against him. Jackson has a constitutional right "to know the offense with which he is charged, not to know the details of *how* it will be proved." *Fassnacht*, 332 F.3d at 446 (quoting *Kendall*, 665 F.2d at 135) (emphasis added). Therefore, his motion for a bill of particulars is denied.

## IV.  Judge Joseph's Remaining Recommendations Will Be Adopted.

Judge Joseph's Report included two other recommendations. The magistrate judge recommended: (1) granting Jackson's motion to suppress out-of-court statements (and his request for a hearing on the issue); and (2) denying Jackson's motion to suppress AV-4's identification of him. Neither party has challenged either recommendation. Because there is no clear error present on these issues, the report and recommendation will be adopted as to both.

With respect to Jackson's 2015 out-of-court statements, the government has confirmed it does not plan on using Jackson's 2015 statements. The magistrate judge thus granted the motion to suppress as unopposed. (ECF No. 70 at 14.) This was not plain error and the Court will adopt the recommendation.

Judge Joseph rejected Jackson's attack on AV-4's identification of him after concluding that his motion was based on a misunderstanding of the identification procedure actually used. Jackson confused the labels on the photographs with the order in which AV-4 was shown the photographs and did not challenge that his photo was not actually his photo. (*See* ECF No. 70 at 14.) The record confirms that law enforcement provided AV-4 a booking photo of several people within separate folders that were numbered. (*Id.* at 13.) Officer Orozco reported that AV-4 reviewed each folder, and positively identified Jackson as the target in folder number three. (*Id.*) In his motion, Jackson maintained that AV-4 must have misidentified him because his photo appeared in folder number four, not three. (*Id.*) As the magistrate judge explained, however, the folder labels do not correspond to the order in which law enforcement presented the photos to AV-4. They confirm that they shuffled the folders and presented them to AV-4 in a random order. (*Id.*) Orozco also wrote in his report that AV-4 "positively identified Jackson as her trafficker" "[a]fter looking at each of the photos," further confirming that Jackson was not misidentified. (ECF No. 64 at 2.) The magistrate judge thus properly concluded Jackson's motion was misplaced and should be denied.

Judge Joseph also correctly rejected Jackson's request for an evidentiary hearing on the alleged misidentification. (ECF No. 51 at 2.) To receive an evidentiary hearing, Jackson must proffer testimony that contradicts the government's account. *United States v. Dortch*, 342 F. Supp. 3d 810, 814 (N.D. Ill. 2018) (citing *United States v. McGaughy*, 485 F.3d 965, 969 (7th Cir. 2007)). Jackson's fundamental misunderstanding of the identification procedure was sufficient to eliminate the need for an evidentiary hearing. *United States v. Edgeworth*, 889 F.3d 350, 354 (7th Cir. 2018) ("Reliance on vague, conclusory allegations is insufficient. Instead, the defendant must present definite, specific, detailed, and nonconjectural facts that justify relief.") (internal quotations omitted) (citations omitted).

## CONCLUSION

After a *de novo* review of Magistrate Judge Joseph's report and recommendation, ECF No. 70, the Court overrules Jackson's objections. The Court also adopts Judge Joseph's report and

recommendation concerning Jackson's motions to suppress out-of-court statements and identifications after a review for clear error.

Accordingly,

**IT IS HEREBY ORDERED** that Jackson's Motions to Suppress, ECF Nos. 50 and 51, are **DENIED**.

**IT IS FURTHER ORDERED** that Jackson's Motion to Suppress, ECF No. 52 is **GRANTED**.

**IT IS FURTHER ORDERED** that Jackson's Motion for a Bill of Particulars, ECF No. 53, is **DENIED**.

**IT IS FURTHER ORDERED** that Jackson's request for a *Franks* hearing, ECF No. 50, is **DENIED**.

Dated at Milwaukee, Wisconsin on May 8, 2023.

s/ *Brett H. Ludwig*
BRETT H. LUDWIG
United States District Judge